IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 18-CR-3661 JCH |
| | ) | |
| JUSTIN RILEY BRADFORD, | ) | |
| | ) | |
| Defendant. | ) | |

UNITED STATES' RESPONSE TO DEFENDANT'S
"APPEAL OF DETENTION ORDER" (Doc. 29)

The United States of America responds in opposition to Defendant Justin Riley Bradford's

"Appeal of Detention Order" (Doc. 29), filed July 19, 2019, and states as follows:

The factors to be considered in determining whether there are any conditions of pretrial

release that will reasonably assure a defendant's appearance and the safety of the community are

set forth at 18 U.S.C. § 3142(g).

FACTUAL AND PROCEDURAL BACKGROUND

1.      On October 16, 2018, while on Southwest Airlines flight 859 bound to Dallas

Texas, from Los Angeles, California, Justin Riley Brafford assaulted Victim M.W. and intimidated

the flight crew and flight attendants causing the flight to divert from its planned route to Dallas,

Texas and land in Albuquerque, New Mexico.

According to M.W., who was seated in an aisle seat, Brafford approached her after

boarding the plane and asked if he could sit next to her in the middle seat between her and another

female passenger.  As the plane was preparing for takeoff, Brafford began to lean closer to her seat

with his arm over her armrest and on her leg. M.W. attempted to ignore Brafford by leaning into the aisle, away from him.

According to M.W., Brafford got closer to her and began "playing footsies" with her and almost kicked her, trying to get her attention.  Brafford asked M.W. if he was bothering her.  M.W. advised yes and asked Brafford to stop kicking her.

According to M.W., Brafford continued to kick her, got closer to her and began to pull on her sweater while asking her "what did you say?"  M.W. told Brafford that she did not say anything to him. Brafford asked M.W. where she lived, if she was staying alone in her hotel room, and what her name was. When told that she was with co-workers, Brafford asked if they were on the plane and if she would go out with him. M.W. declined the invitation and advised that she was busy. During this time, Brafford would also whisper, "Don't fuck with me" to M.W.

C.K. is a flight attendant for Southwest Airlines and was working on October 16, 2018, on Southwest Airlines flight 859 in the section occupied by Brafford and M.W.

According to C.K., he mistakenly believed Brafford and M.W. were a couple due to how close Brafford was to M.W. C.K. observed Brafford put his head on M.W.'s shoulder and was in M.W.'s personal space. As C.K. was delivering drinks to passengers, M.W. asked him if there was another seat available because the guy next to her was making her feel uncomfortable. C.K. requested M.W. meet him in the rear of the plane near the lavatories.  Once in the rear of the plane, M.W. complained that Brafford was asking her out, touching her and rubbing her feet with his.

According to C.K., he changed her seat, and after doing so, M.W. requested that C.K. get her personal belongings from her original seat because she did not feel comfortable going back there. C.K. retrieved M.W.'s items, (two bags, a drink, and a laptop), and brought them to her new seat. C.K. then offered M.W. a complimentary beverage, which she accepted.

According to C.K., when he returned to deliver her complimentary beverage, M.W. was crying and informed him that Brafford had come to her new seat and confronted her. C.K. approached Brafford, who was sitting in M.W.'s old seat and informed him to "leave it alone." C.K. advised that he spoke to Brafford in a quiet voice as to not disturb the nearby passengers.

Brafford reacted by standing up and yelling at C.K.. C.K. believes he was saying variations of this is not happening, we're not doing this, and this is not "fucking" going on. Brafford was yelling at the top of his lungs and used the word "fuck" a lot. The flight attendant indicates that he was intimidated by Brafford during the interaction. Another crewmember was prepared to assist C.K. if necessary.

According to C.K., Brafford was not acting like a normal person and seemed to have gone from "zero to sixty in nano-seconds." He believed Brafford was possibly on drugs. Brafford in his post arrest statement admitted to drug usage. Since Brafford was displaying erratic behavior, and had already touched an unwilling passenger, C.K. was intimidated and believed that Brafford also intimidated other passengers in the immediate area.

According to C.K., other flight attendants noticed what was happening. One flight attendant advised C.K. to "back up" and stood behind him during the confrontation while the other flight attendant utilized the telephone in the rear of the plane to make contact with the pilot and inform him of what was going on.

According to C.K., the pilot could hear Brafford's yelling through telephone. C.K. did not yell back, but continuously informed Brafford to sit down. Finally, Brafford complied and sat down, C.K. went to the rear of the plane and spoke with the pilot on the phone. The pilot asked C.K. if he thought they needed to divert the flight to a closer airport. C.K. advised that he believed they needed to divert the flight and remove Brafford from the plane before anything else happened.

The pilot, having heard the yelling by the Defendant, agreed that diverting the plane was required. During the remainder of the flight, C.K. and the other flight attendants prepped their restraints and had them ready just in case Brafford caused another problem and needed to be restrained. The flight landed in Albuquerque, New Mexico. Once the plane arrived in Albuquerque, local law enforcement arrived at the airport.

According to Brafford, who provided an audio-recorded statement after being read his Miranda Rights and agreeing to waive his rights, he was sitting in the middle seat next to M.W. He and M.W. were watching videos on M.W.'s computer.  M.W. had put her arm on top of his as they watched videos and Brafford believed she may have been flirting with him. Brafford then began to nudge M.W.'s leg to get her attention. M.W. initially ignored Brafford but then acknowledged him by telling him to stop kicking her. Brafford asked M.W. what she had said. M.W. told him that she had not said anything.  Brafford then told M.W., "You're fucking with me". Brafford said he felt like they were connecting and decided to put his hand on the side of M.W.'s leg, but felt like he went too far, and had misread the situation. He approached M.W. again and, she was crying after the encounter. M.W. asked for help from the flight attendant again. Brafford was approached again and asked not to contact M.W. His response and behavior was such that he intimidated the flight attendant, who jointly with the pilot, agreed to divert the flight to Albuquerque.

2.      On October 17, 2018, a criminal complaint was filed (doc. 1), against the Defendant, charging two counts, that is Interference with the Flight Crew and Simple Assault in violation of 46 U.S.C. §§ 46501, 46504 and 46506 and 18 U.S.C. § 113(a)(5).

3.      A preliminary hearing was held on October 18, 2018, followed by a detention hearing where Magistrate Judge Karen Molzen, on October 18, 2018, signed the "Order of Detention Pending Trial (doc. 8).

4.      The Defendant, through his appointed counsel, John V. Butcher, Assistant Federal Public Defender, filed the "Appeal of Detention Order (doc. 29) on July 19, 2019.

<u>ARGUMENT</u>

5.      The district court has the authority to review a magistrate court's decision of a release or detention order, or a court having original jurisdiction of the offense.  <u>United States v. Cisneros</u>, 328 F.3d 610, 613 (10th Cir. 2003). "The standard of review for the district court's review…under [18 U.S.C.] § 3145(a) is de novo." <u>United States v. Vencomo-Reyes</u>, No. CR 11-2563 JB, 2011 U.S. Dist. LEXIS 138823 (D.N.M. Nov. 28, 2011) ; quoting <u>Cisneros,</u> 318 F.3d at 616 n.1. The district court must "make an independent determination" sustain the pretrial detention order or revoke it instituting proper conditions for release.  <u>Vencomo-Reyes</u>, at *15; quoting <u>United States v. Rueben,</u> 974 F.2d 580, 585-86 (5th Cir. 1992).

6.      Upon review of statutory authority, relevant case law, and the historical facts and circumstances to this case, the United States opposes the Defendant's appeal.  Review of all the 18 U.S.C. § 3142(g) factors indicates that there are no conditions or combination of conditions that will reasonably assure the appearance of the Defendant as required. The United States examines the following:

a.      The first factor in § 3142(g) is the nature and circumstances of the offense charged.  The Defendant is cited for violating 46 U.S.C. §§ 46501, 46504 and 46506 and 18 U.S.C. § 113(a)(5). The penalty for the indictment is imprisonment for a period up to twenty years' imprisonment. <u>See</u> 49 U.S.C. § 46504.

b.      The second factor is the weight of the evidence against the Defendant. In this case the Defendant assaulted another passenger requiring the flight crew to move the passenger, thus clearly lessening the ability of crew to perform its duties. The Defendant again interfered with this passenger once she was moved. He had to be directed not to interfere with her again, and his volatile reaction intimidated the flight attendant to the point he recommended to the pilot that the flight should be diverted to Albuquerque. The Defendant argues that his drug addiction has dissipated and this he is no longer a threat. Doc. 29. Unfortunately, this does not negate the risk the Defendant presents because his behavior occurred days after his release on parole. There are certainly, no guarantees that someone, who is addicted, has overcome that addiction by spending the last several months in jail.

The Defendant's lengthy criminal history, which may relate to his addiction, does not bode well for release even to the hallway house. Certainly, that was taken into account by Judge Molzen.

Additionally, the Defendant's admission to using heroin during his arrest demonstrates substance abuse that warrants continued detention. He had just been released on parole days before this event occurred. There is no assurance he will appear in court to these proceedings unless he remains detained.

7.      The United States continues to support its position that the Defendant is a significant flight risk and a danger to the community as found by the Court (Doc. 8). Analysis of § 3142(e) requires assessing whether or not a defendant is a flight risk.  In this case, the Defendant is a flight risk, as he faces a term of imprisonment and has no familial ties to New Mexico.  The Court in its findings relied on many factors in finding that he was a flight risk and a danger. See Docs. 8 pps. 2-3. Defendant has little incentive to remain in the District of New Mexico while his case is pending. He has previously failed to appear and has violated his parole at least twice.

8.     The legislative history of the Bail Reform Act of 1984 is pertinent to continue to detain Defendant Brafford before trial.

a.     In United States v. Salerno, 481 U,S. 739 (1987), The Supreme Court addressed the history and focus of the Bail Reform Act of 1984, especially the recognition that persons who commit certain offenses are dangerous and should be detained prior to trial.  The Court wrote:

> Responding to 'the alarming problem of crimes committed by persons on release,' (S. Rep. No. 98-225, p. 3 (1983), U.S. Code Cong. & Admin. News 1984, pp. 3182, 3185), Congress formulated the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq. (1982 ed., Supp. III), as the solution to a bail crisis in the federal courts. Congress hoped to 'give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may post to others if released.'

S. Rep No. 98-225, at 3, U.S. Code Cong. & Admin. News 1984, p. 3185. Id. at 741.  The Congress also addressed the government's interest in preventing further crime on the part of those persons arrested for especially egregious offenses:

> The government's interest in preventing crime by arrestees is both legitimate and compelling.  De Veau v. Braisted, 363 U.S. 144, 155 (1960).  The Act operates only on individuals who have been arrested for a specific category of *extremely serious offenses*.  See 18 U.S.C. § 3142(f).  (Emphasis added). His specific crime occurred in an airplane and had led to an extreme measure of diversion given his volatile behavior and the possible consequences.

Pretrial detention is constitutionally permissible as its purpose is regulatory in nature.

9.     The reasons presented by Defendant requesting release do not negate the several factors as found by the Court in favor of detention given his present unlawful acts.  The Defendant is a flight risk and a danger to the safety of others who should not be released from custody while he awaits further proceedings, as the Magistrate Court found. (Doc. 8)

WHEREFORE, the United States respectfully requests that this Court uphold the findings of the Magistrate Court and deny Defendant's Appeal of the Detention Order.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*/s/ Presiliano A. Torrez*
PRESILIANO A. TORREZ
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I hereby certify that on the 30th day of
July, 2019, I filed the foregoing using CM/ECF
Which caused the following parties or counsel to
be served by electronic means, as more fully reflected
on the Notice of Electronic filing:

    Mr. John V. Butcher
    Attorney for Defendant
    John_Butcher@fd.org

/s/_____
Presiliano A. Torrez
Assistant United States Attorney

8